UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **JAMES C. EVINGER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 2:12-cv-25-WTL-WGH |
| ) | |
| **EMERY WINSLOW SCALE COMPANY,** ) | |
| *also known as* **WINSLOW SCALE CO.,** ) | |
| ) | |
| **Defendant.** ) | |

### ENTRY ON MOTION TO DISMISS

Before the Court is the Defendant's motion to dismiss (Docket No. 14). The motion is fully briefed, and the Court being duly advised, now **DENIES** the Defendant's motion for the reasons set forth below.

### I. STANDARD

In considering a Rule 12(b)(1) motion, the Court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). However, the Court "may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."*Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). The burden of proof remains with the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

## II. BACKGROUND

The facts relevant to the instant motion are as follow. On November 9, 2009, Plaintiff James C. Evinger filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. On March 16, 2010, Evinger's Chapter 13 Plan, which provided for full payment of all allowed claims, was confirmed. On September 13, 2011, Evinger's employment with Defendant Emery Winslow Scale Company ("Winslow") was terminated, and Evinger then filed an EEOC complaint alleging age discrimination on October 25, 2011. After the EEOC issued a "Notice of Right to Sue" on January 31, 2012, Evinger filed suit against Winslow in this Court based on the same allegations asserted in his EEOC charge. Evinger moved to amend his bankruptcy plan on March 26, 2012, but did not include the instant action in his schedule of assets. On May 15, 2012, Winslow filed its motion to dismiss, asserting that Evinger lacked standing to sue on the instant claim because he had not scheduled it in his bankruptcy case. On May 31, 2012, Evinger amended his schedule of assets to include the instant action. The bankruptcy court held a hearing on Evinger's March 26 motion on June 7. On June 8, the bankruptcy court granted the motion and this Court takes judicial notice of that order.

Now before the Court is Winslow's May 15, 2012, motion to dismiss. In the alternative, Winslow seeks to limit Evinger's damages to the amount needed to satisfy Evinger's bankruptcy creditors. The Court addresses each argument below.

## III. DISCUSSION

### A. Evinger's Standing to Sue

Evinger has awakened one of the slumbering ogres guarding the Chapter 13 bankruptcy bridge; namely, the Post–Plan-Confirmation Estate, who some argue is merely make-believe.

This intractible beast has been, and continues to be, debated in great detail. *E.g.*, *In re Jones*, 657 F.3d 921, 927 (9th Cir. 2011) (summarizing the four approaches used by courts); David Gray Carlson, *The Chapter 13 Estate and its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233 (Winter 2009). Luckily, this Court need not unsheathe its sword and join the battle, for even if Evinger is swept up by the ogre, the Federal Rules of Civil Procedure will ride in on a white horse to save him. However, lest this story reveal its resolution prematurely, let us turn to the beginning, where all good stories naturally begin.

Once upon a time, the Defendant in our story, Winslow, argued that Evinger, as a bankruptcy debtor, did not have standing to sue on the instant claim because it is an asset in his bankruptcy estate. *See* 11 U.S.C. § 1306; 11 U.S.C. § 541. As an asset of the estate, so Winslow argued, only the bankruptcy trustee has standing to bring the action. However, after Evinger's response, in which he clarified that he is currently suing as a Chapter 13 debtor-in-possession on behalf of his estate, Winslow now agrees that Evinger may pursue this matter as a Chapter 13 debtor-in-possession for the benefit of the estate. Def.'s Resp. 4, June 7, 2012, ECF No. 20. Winslow continues to fret, however, over whether Evinger is *truly* suing on behalf of his estate, given certain representations in Evinger's response.[1] If Evinger is actually seeking recovery on his own behalf, Winslow now argues, then Evinger does not have standing to pursue his claim.

Whether Evinger may sue, and on whose behalf, is actually a much trickier issue than Winslow argues. Pursuant to 11 U.S.C. § 1306, property acquired by the debtor following bankruptcy filing, but before the case is closed, dismissed, or converted, is property of the estate.

---

[1] For example, Evinger says only that the trustee "may" ask him to use some of the judgment proceeds, if any, to pay creditors under the bankruptcy plan.

3

However, the confirmation of a Chapter 13 bankruptcy plan "vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). For the purposes of our story, the intersection of these two provisions is important. Evinger's rights in this lawsuit accrued post-confirmation, but his plan has since been modified to reduce his payments and include this lawsuit as an asset. The crux of the story is this: is the lawsuit property of Evinger's estate or is control of the lawsuit vested in Evinger?

According to the Seventh Circuit, "the two sections, 1306(a)(2) and 1327(b), . . . mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Matter of Heath*, 115 F.3d 521, 524 (7th Cir. 1997). This would suggest that the estate continues to exist post-confirmation, but only to the extent necessary to satisfy the plan. *Contra In re Jackson*, 403 B.R. 95, 99-100 (Bankr. D. Idaho 2009).

At the time this suit accrued, Evinger's confirmed bankruptcy plan required him to make monthly payments of $1,480.00. When Evinger moved to amend his plan and reduce these payments, he did so on the basis that his "income has been reduced significantly as of February, 2012, as [Evinger] is now only receiving Social Security income." Debtors' Motion to Modify Confirmed Plan of Reorganization ¶ 4, Case No. 09-81881-FJO-13, March 26, 2012, ECF No. 31. It is thus safe to assume that at least some of Evinger's wages from Winslow were necessary to fulfill the terms of his plan. Evinger's interest in his wages are now represented by his interest in this lawsuit, and thus, under *Heath*, this lawsuit is part of Evinger's bankruptcy estate. As a result, when Evinger filed this lawsuit, he should have done so on behalf of his estate. *See* Fed.

R. Bankr. P. 6009; *see also Cable v. Ivy Tech State College*, 200 F.3d 467, 472-73 (7th Cir. 1999) ("Chapter 13 grants the debtor possession of the estate's property, 11 U.S.C. § 1306(b), . . . [and] [i]t would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit of the estate." (citations omitted)). It is unclear whether he did so,[2] and the inquiry is further complicated by the next chapter in our story.

Evinger filed a motion to amend his plan and reduce his payments on March 26, 2012, after he had filed this lawsuit. He did not initially disclose this lawsuit on his schedule of assets (a part of the story we will visit again later), but he did amend his schedules to include this lawsuit on May 31, 2012. While the trustee objected to modification of the confirmed plan, the bankruptcy court ultimately approved Evinger's motion to amend the plan. Under the new plan, Evinger must make monthly payments of $530.00. Given that the plan was modified at least in part due to Evinger's lost wages, it is likely that the damages sought by Evinger in this suit, which currently remain contingent and unliquidated, are no longer necessary to fulfillment of the plan as it currently stands. Under *Heath*, then, control of the lawsuit has been returned to Evinger.[3] If this is so, then Evinger himself may bring suit on his own behalf, which it appears he

---

[2] One source of this confusion (and Winslow's concerns) is the following sentence in Evinger's response to the instant motion: "Evinger's Chapter 13 Trustee[ ] has indicated that he may . . . ask Evinger to use some of the proceeds . . . to pay creditors. . . . It is possible that Evinger may have to pledge his proceeds" to his unsecured creditors. Pl.'s Resp. 6, May 31, 2012, ECF No. 19.

[3] The Court notes that this reading of *Heath* reaches the same result, albeit for a different reason, as the Chapter 13 trustee reached in reviewing this case: "[S]ince neither the Plan nor the Order Confirming the Plan provides otherwise, I generally conclude that a gift, inheritance, a windfall or the like acquired after confirmation is vested in the Debtor rather than in the Chapter 13 Standing Trustee."

5

has done.

And yet the plot thickens. In a letter responding to inquiry by Winslow's counsel, Chapter 13 Trustee Donald Decker explains:

> It seems to me that the Debtor should disclose the property which in this case is a cause of action with the understanding that he will report to the Trustee and the Court as [sic] such time as the claim is liquidated, or the Chapter 13 Debtor is entitled to funds which arguably may be property of the estate. At that stage, I have the prerogative to modify the plan and the Bankruptcy Court has acknowledged my standing to seek modification of a confirmed plan to increase the dividend to unsecured claim holders in some cases. These cases generally are driven more by policy considerations than by Code analysis.

If the Trustee does move to increase the dividend because Evinger has prevailed in his lawsuit against Winslow and has since come into additional funds, and if the bankruptcy court approves the motion, Evinger's monthly payment amount will increase. If his payments increase, then property that was formerly within his control (ie., the judgment proceeds) may become necessary to fulfill the new plan. In other words, if the Trustee is correct, increasing the dividend to creditors effectively wrests control of property that has vested in Evinger and brings it into the control of the bankruptcy estate. It thus appears that property vested in Evinger may become property of the estate once again. If that is the case, then Evinger would be permitted to proceed only on behalf of his estate.

It would seem that we have reached that place in our story where the villain, the intractible Post–Plan-Confirmation Estate, is on the brink of victory, for he is blocking the path across the bridge. Is the lawsuit part of Evinger's estate or isn't it? Must Evinger sue on behalf of his estate or may he sue on his own behalf? There can be no answer now because we do not know and can not know whether, if Evinger prevails, the Trustee will seek to modify the plan. However, we do know this much: whether it is because his interest in the lawsuit is vested in

him, or because he has possession of estate property during the pendency of his bankruptcy, see 11 U.S.C. § 1306(b), Evinger has standing. The question is merely, who is the real party in interest?

Luckily for Evinger, the Federal Rules of Civil Procedure will save the day. Simply put, at this point, it doesn't matter. Pursuant to Rule 17(a)(1)(G), even if the real party in interest is Evinger's estate, Evinger need not have brought suit in its name because Evinger is authorized by Bankruptcy Procedure Rule 6009 to sue on behalf of the estate. Accordingly, Winslow's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is denied.

### B. Limitation on Damages

This is not the end of our story, for if Evinger has standing, Winslow then seeks to limit Evinger's damages pursuant to the doctrine of judicial estoppel. Judicial estoppel is an equitable concept providing that a party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate that ground. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). In other words, judicial estoppel protects this Court from attack by a new kind of villain: the Two-Faced Litigant. *See id*. In the context of bankruptcy cases, the application of judicial estoppel means that, at times, the interest in protecting the integrity of the judicial system outweighs the interests of creditors in an increased recovery as well as prevention of a windfall to defendants. "Although the doctrine has no precise bounds, certain clear prerequisites exist for its application: (1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.* (quotations omitted).

While Winslow cites many cases in which courts have applied judicial estoppel in cases

of bankruptcy debtors who have failed to disclose lawsuits on their asset schedules, the particular Chapter 13 posture of this case tips the balance in the opposite direction. *Cf., e.g.*, *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006) (Chapter 7 bankruptcy debtor failed to include existing lawsuit in her initial schedule of assets, received discharge, and then attempted to pursue suit to completion; court barred debtor from realizing on the claim for her personal benefit); *Smith v. American General Life Ins. Co.*, 544 F. Supp.2d 732 (C.D. Ill. 2008) (Chapter 7 debtor failed to include existing claim against employer in his initial schedule of assets, received discharge, then sought to reopen case and amend schedule of assets; court granted employer summary judgment through application of judicial estoppel because debtor's nondisclosure was not inadvertent). While Evinger's former position is clearly inconsistent with his current position and the facts at issue are the same, it is not clear that the bankruptcy court ever adopted Evinger's position.

  Here, integrity of the judicial system has not actually been impugned, as the bankruptcy court neither relied on nor adopted Evinger's implicit assertion that the lawsuit did not exist. It is undisputed that, at the time of the initial plan confirmation, Evinger's cause of action did not exist. Thus, the earliest that Evinger's schedules could have been rendered false by omission with respect to this asset is when the cause of action accrued, sometime in September 2011. However, at that time, Evinger's plan provided for full payment of his creditors. Therefore, while Evinger may have breached his continuing duty to disclose new assets by not amending his schedules as soon as his claim accrued, he gained nothing by his breach: he was already

paying his creditors at 100%.[4] Evinger's omission only becomes important from an equitable standpoint when he stood to gain from it – which did not occur until his motion to amend his plan and reduce his payments to creditors was approved by the bankruptcy court. In the time between Evinger's motion to amend his plan and the bankruptcy court's order approving the amendment, Evinger disclosed the asset. As a result, when the bankruptcy court ultimately did rely on or adopt Evinger's schedules, they were accurate with respect to this asset.

Winslow argues that Evinger would not have disclosed the asset in the interim but for Winslow's motion to dismiss. This may very well be true, but the Court can not know for sure. Furthermore, even if true, at this point it is just as likely that Evinger's omission was an innocent oversight as it was an intentional attempt to circumvent the bankruptcy court.[5] Essentially, then, Winslow's request is for a bounty: it ferreted out an omission in Evinger's schedules in a case unrelated to the case pending against it and, so the argument goes, should be rewarded by a decrease in its own liability even if it terminated Evinger's employment because of his age – a direct violation of the ADEA. Such a result falls on the wrong side of equity and circumvents the purposes of the ADEA – "not only to address individual grievances, but also to further important social policies," including the employment of older persons based on their ability rather than age. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27 (1991).

---

[4] This fact also supports a finding that Evinger's omission, at least until his motion to modify his plan was approved, was inadvertent. An omission is inadvertent and does not trigger judicial estoppel when 1) the debtor is unaware of the claim, or 2) the debtor has no motive to conceal the claims. *E.g.*, *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600-01 (5th Cir. 2005).

[5] Uncertainty regarding the debtor's subjective intent in cases of this kind is likely the reason that subjective intent is irrelevant to the judicial estoppel inquiry. *See Cannon-Stokes*, 453 F.3d at 448-49.

9

Furthermore, even if this Court were inclined to apply judicial estoppel, it's not clear that its application could achieve the result Winslow seeks – that is, prevent Evinger from monetarily gaining from his omission, without at the same time harming Evinger's creditors. As explained above, Evinger is currently in control of the lawsuit by virtue of his plan modification approval. Under *Heath* (and confirmed by the Chapter 13 Trustee), if the plan is not hereafter modified and this lawsuit results in judgment proceeds, those proceeds will go directly into Evinger's pocket because the proceeds will not be necessary to fulfilment of Evinger's bankruptcy plan. Those proceeds will only pass to Evinger's creditors if the Trustee elects to seek modification of the plan, a result not certain to occur, as it is "driven more by policy considerations than by Code analysis." Thus, even if, say, $50,000 were necessary to pay Evinger's creditors in full, and this Court were to limit Evinger's judgment to $50,000, there is no guarantee that that $50,000 would ever actually reach Evinger's creditors.

Finding no imminent attack by the Two-Faced Litigant here, the Court denies Winslow's motion to cap Evinger's damages.

### III. CONCLUSION

For the foregoing reasons, Winslow's motion to dismiss and its motion to limit Evinger's damages is **DENIED**.

**SO ORDERED:**  07/30/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.